# EXHIBIT "A"

Adam J. Krolikowski (SBN 202946)
THE KROLIKOWSKI LAW FIRM
930 W. 17th Street, Suite D
Santa Ana, CA 92706
T. (949) 269-1869
F. (949) 269-1868
Email: adam@usethelaw.com
*Attorneys for* TAMI ENG

**Electronically FILED by Superior Court of California, County of Los Angeles 7/20/2026 12:00 AM David W. Slayton, Executive Officer/Clerk of Court, By E. Madrid, Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| TAMI ENG,<br><br>Plaintiff,<br><br>vs.<br><br>SPROUTS FARMERS MARKET, INC. and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 26NNCV05731<br>Assigned for all Purposes to<br><br>**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES**<br><br>Damages In Excess of $35,000.<br>Jury Trial Demanded. |

COMES NOW Plaintiff TAMI ENG avers, alleges and sets forth the following facts and causes of action against Defendants SPROUTS FARMERS MARKET, INC. and DOES 1 to 50, inclusive:

## GENERAL ALLEGATIONS

1. At all times relevant herein, Plaintiff TAMI ENG ('Plaintiff') was and is an individual residing in the City of Monrovia, County of Los Angeles, State of California. On July 20, 2024, Plaintiff was a business invitee lawfully present on the premises of Sprouts Farmers Market located at 400 W. Huntington Dr., Monrovia, California 91016 ('the Premises').

2. Defendant SPROUTS FARMERS MARKET, INC. ('Sprouts' or 'Defendant') is a corporation organized and existing under the laws of the State of Delaware, authorized to do

business and doing business in the State of California. At all times relevant herein, Sprouts owned, operated, managed, controlled, inspected, and/or maintained the retail grocery store located at 400 W. Huntington Dr., Monrovia, California 91016, including the aisles, floors, and common areas therein.

3. The true names and capacities of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues said defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said fictitiously named defendants when the same are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated herein as a DOE is in some manner responsible for the events, acts, omissions, negligence, and injuries alleged herein, and that each such defendant proximately caused Plaintiff's injuries and damages as alleged.

4. At all times relevant herein, each of the Defendants, including DOES 1 through 50, was the agent, servant, employee, partner, joint venturer, alter ego, and/or co-conspirator of each of the remaining defendants, and in doing the things alleged herein was acting within the course and scope of said agency and employment, with the knowledge, permission, and/or consent of each of the other defendants.

5. Venue is proper in this Court pursuant to Code of Civil Procedure §§ 395 and 395.5 because the incident giving rise to this action occurred in the County of Los Angeles, State of California, and Defendant Sprouts regularly does business in, and has its place of business in, the County of Los Angeles.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(Against All Defendants)**

6. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 5, inclusive, as though fully set forth herein.

7. Defendants, and each of them, owed Plaintiff, as a business invitee lawfully present on the Premises, a duty to exercise ordinary care in the management and maintenance of the Premises in order to avoid exposing Plaintiff and other persons on the Premises to an

unreasonable risk of harm, as codified in California Civil Code § 1714 and as recognized under California common law.

8. On or about July 20, 2024, at approximately 9:30 p.m., there existed on the floor of the aisle between the paper goods, natural cleaning products, and pet food section on one side and the refrigerated drinks section on the other — within the Sprouts Farmers Market store located at 400 W. Huntington Dr., Monrovia, California 91016 — a dangerous and hazardous condition consisting of (a) a translucent, slick, semi-liquid substance commonly referred to at the scene as 'slippery goop' on the floor of the aisle, and/or (b) a floor surface that was maintained, treated, waxed, finished, and/or surfaced in a manner that failed to provide adequate slip resistance and rendered the aisle unreasonably slippery and dangerous to pedestrians lawfully traversing it (hereinafter collectively, 'the Dangerous Condition'). Plaintiff is informed and believes, and thereon alleges, that the floor surface at the location of her fall lacked an adequate coefficient of friction and/or slip-resistant surfacing sufficient to protect business invitees against the risk of slipping and falling. Said Dangerous Condition was not isolated: an identical or similar slippery substance was contemporaneously discovered by Sprouts produce clerk Isaiah and Plaintiff's husband Harvey Eng at a second, separate location at the opposite end of the same store.

9. The Dangerous Condition existed on the floor of the Premises for a period of time prior to Plaintiff's fall that was sufficient, in the exercise of reasonable care, for Defendants, and each of them, to have discovered, corrected, and/or warned patrons about the condition. Specifically, the presence of the same or similar substance at two distinct locations within the store supports the reasonable inference that the condition had been present for an extended period of time and was widespread, and was not the result of a sudden, isolated spillage immediately before the incident. No warning cones, no wet-floor signage, and no physical barrier of any kind was placed at or near either location of the Dangerous Condition.

10. Defendants, and each of them, had actual notice, or are charged with the actual notice of their agents and employees, of the Dangerous Condition. An unnamed female Sprouts Farmers Market clerk had walked through or past the area of the Dangerous Condition on multiple occasions during the period immediately preceding Plaintiff's fall, including multiple pass-

throughs of the dry-goods section where the Dangerous Condition was located, yet neither corrected nor warned patrons of the hazard. Said clerk's repeated presence in the immediate area of the Dangerous Condition constituted actual or constructive knowledge of, and failure to remedy, the condition.

11. Defendants, and each of them, failed to implement and/or maintain an adequate inspection, cleaning, and maintenance protocol for the floor surfaces of the Premises. No store walk-through, safety inspection, or hazard-identification sweep had been conducted with respect to the aisle at issue within a reasonable period prior to the incident. Defendants maintained no surveillance cameras covering the accident aisle — only door-entry cameras — such that no video evidence of the condition or the duration thereof was preserved.

12. Defendants, and each of them, breached their duty of care to Plaintiff by, among other things: (a) failing to discover and remedy the Dangerous Condition before Plaintiff's fall; (b) failing to warn Plaintiff and other business invitees of the existence of the Dangerous Condition by placement of warning cones, wet-floor signage, or other notice; (c) failing to adequately inspect, patrol, and maintain the floor surfaces of the Premises, including the aisle at issue, so as to identify and remove the Dangerous Condition before Plaintiff was injured; (d) allowing the Dangerous Condition to remain on the floor of the Premises for a period of time sufficient that it was, or should have been, known to Defendants' employees; (e) failing to maintain an adequate surveillance system covering the accident aisle that would have allowed for the detection and documentation of the Dangerous Condition; (f) failing to install, maintain, and/or treat the floor surface of the aisle with adequate slip-resistant material or finish so as to provide a reasonably safe walking surface for business invitees; and (g) through the acts and omissions of their agents and employees, including but not limited to the unnamed female clerk who repeatedly passed the area of the Dangerous Condition without correcting or reporting it.

13. As a direct, proximate, and legal result of the aforementioned negligence and breach of duty by Defendants, and each of them, Plaintiff TAMI ENG slipped and fell on the Dangerous Condition at approximately 9:30 p.m. on July 20, 2024. Plaintiff skidded through the slippery substance, was unable to stop or catch herself, and fell, landing on her knees while extending

both hands to break her fall and to avoid striking her head on the hard floor surface. The negligence of Defendants, and each of them, was a substantial factor in causing Plaintiff's fall and the injuries and damages alleged herein.

14. As a direct and proximate result of the fall caused by Defendants' negligence, Plaintiff sustained immediate injuries to her bilateral wrists, hands, knees, and ankles, including cuts and bruises to the left knee and right calf. Plaintiff was shaken, dazed, and in pain at the scene.

15. As a direct and proximate result of the negligence of Defendants, and each of them, Plaintiff has sustained, and continues to sustain, general and special damages as follows:

(a) **PHYSICAL INJURIES:** Plaintiff sustained extensive bodily injuries causally attributed to the July 20, 2024 fall, including but not limited to: cervical spine sprain with radiculopathy (ICD S13.4XXA / M54.12); thoracic spine sprain (S23.3XXA) with MRI-documented disc protrusions at T4-T5 and T5-T6 (2.3 mm each) with disc desiccation and height loss; lumbar spine sprain with radiculopathy (S33.5XXA / M54.16) with MRI-documented L4-L5 disc protrusion (2.4 mm) with neural foraminal narrowing and lateral recess stenosis and L5-S1 disc protrusion (3.0 mm) with annular fissure; bilateral shoulder sprains (S43.491A / S43.492A) with right shoulder adhesive capsulitis (M75.01) and rotator cuff tendinopathy; right elbow sprain (S53.49A), synovitis, and lateral epicondylitis (M77.11); bilateral wrist and hand sprains (S63.501A / S63.502A / S63.91XA / S63.92XA) with MRI-documented flexor tenosynovitis and tendinopathy bilaterally; aggravation of pre-existing left trigger finger (M65.332) and left thumb CMC arthritis (M18.12); bilateral trochanteric bursitis (M70.61 / M70.62); left hip MRI-documented small joint effusion and gluteus medius tendinopathy; bilateral knee medial meniscus horizontal tears (left: posterior horn and body; right: anterior horn, body, and posterior horn) with joint effusions and subchondral cysts on MRI dated March 2, 2025; traumatic chondromalacia patellae, both knees (M25.561 / M25.562); left ankle Grade I LCL sprain (S93.402A) with MRI-documented partial tear of the anterior talofibular ligament, sinus tarsi syndrome, and Achilles tendinopathy; right foot MRI-documented 5th flexor tenosynovitis; and bilateral metatarsalgia (M77.41 / M77.42) and bilateral ankle contusions.

(b) **PAST AND FUTURE MEDICAL EXPENSES:** Plaintiff has incurred past medical expenses for urgent care, chiropractic care (Smart Spine Institute), acupuncture (Acupuncture Health Center), physical therapy and aquatic physical therapy (Select Physical Therapy), and orthopedic care (Congress Orthopedic Associates — Drs. Adamson, Lin, and Kokubun), beginning July 20, 2024 and continuing to the present. Plaintiff will require future medical treatment, including but not limited to, continued orthopedic care, physical and aquatic therapy, additional imaging, and possible surgical intervention, all in amounts to be proven at trial.

(c) **PAST AND FUTURE LOST EARNINGS:** Plaintiff has suffered loss of earnings and/or earning capacity in an amount to be proven at trial.

(d) **GENERAL AND SPECIAL DAMAGES:** Plaintiff has suffered and continues to suffer pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, and other non-economic damages. The amount of Plaintiff's damages exceeds the minimum jurisdictional limits of this Court, and the exact amount thereof will be proven at trial.

16. As a further direct and proximate result of Defendants' negligence, Plaintiff's bilateral knee injuries caused progressive weakness, instability, and impaired ambulation.

17. Plaintiff seeks damages as set forth below.

**SECOND CAUSE OF ACTION**

**Premises Liability**

**(Against All Defendants)**

18. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 17, inclusive, as though fully set forth herein.

19. At all times relevant herein, Defendants, and each of them, owned, leased, occupied, managed, controlled, and/or maintained the Premises located at 400 W. Huntington Dr., Monrovia, California 91016, including the interior retail aisles, floor surfaces, and common areas. Defendants, and each of them, had the right and duty to inspect, repair, clean, maintain, and warn invitees of dangerous conditions on the Premises.

20. Pursuant to California Civil Code § 1714 and established California common law,

Defendants, and each of them, as owners and/or operators of a premises open to the public for business, owed a duty to Plaintiff TAMI ENG, a business invitee, to exercise ordinary care in the management of the Premises so as to avoid exposing Plaintiff to an unreasonable risk of harm from dangerous conditions on the floor surfaces of the Premises. This duty included the affirmative obligation to inspect the Premises, discover dangerous conditions, and either repair such conditions or provide adequate warning to business invitees.

21. On July 20, 2024, at approximately 9:30 p.m., a dangerous condition existed on the floor of the Premises, to wit: (a) a translucent, slick, semi-liquid substance ('slippery goop') on the floor of the aisle located between the paper goods, natural cleaning products, and pet food section on one side and the refrigerated drinks section on the other, and/or (b) a floor surface that was inadequately maintained, treated, or surfaced and lacked adequate slip resistance, rendering the aisle unreasonably slippery. Plaintiff is informed and believes, and thereon alleges, that the floor surface at the location of her fall failed to provide an adequate coefficient of friction for the safe passage of business invitees. Said dangerous condition rendered that section of the Premises unreasonably dangerous to business invitees, including Plaintiff, who was lawfully present and walking in said aisle.

22. Defendants, and each of them, had actual and/or constructive notice of the Dangerous Condition prior to Plaintiff's fall, based upon the following specific facts:

(a) **ACTUAL NOTICE:** An unnamed female Sprouts Farmers Market clerk was present in and traversed the aisle area on multiple occasions during the period immediately preceding Plaintiff's fall, passing the location of the Dangerous Condition multiple times without taking corrective action;

(b) **NON-ISOLATED CONDITION:** The same or similar slippery substance was simultaneously present at a second, distinct location at the opposite end of the same store, as discovered by Sprouts produce clerk Isaiah and Plaintiff's husband Harvey Eng following the fall, demonstrating that the condition was not isolated and had existed in multiple locations within the Premises;

(c) **DURATION:** By reason of the non-isolated, widespread nature of the condition and its presence in at least two separate locations, the Dangerous Condition had existed for a sufficient period of time prior to Plaintiff's fall that Defendants, in the exercise of reasonable care, knew or should have known of its presence; and

(d) **FAILURE TO INSPECT:** Defendants maintained no adequate inspection or cleaning protocol for the floor surfaces of the aisle at issue, and no evidence exists of any inspection, cleaning, or patrol of the aisle within a reasonable period prior to the fall.

23. Despite having actual and/or constructive notice of the Dangerous Condition, Defendants, and each of them, failed to correct, remedy, or eliminate the Dangerous Condition, and failed to warn Plaintiff or any other business invitee of the existence of the Dangerous Condition. No wet-floor warning cones, no warning signage, and no physical barrier were placed at or near the Dangerous Condition at any time prior to Plaintiff's fall.

24. Defendants, and each of them, breached their duty of care to Plaintiff in their capacity as owners, operators, and/or managers of the Premises by, among other things: (a) failing to maintain the floor surfaces of the Premises in a safe, clean, and hazard-free condition; (b) failing to install, maintain, treat, and/or surface the floor of the aisle with adequate slip-resistant material or finish so as to provide a reasonably safe walking surface; (c) failing to implement and enforce adequate inspection and maintenance protocols for the floor surfaces of the aisles; (d) allowing the Dangerous Condition — a slick, semi-liquid, translucent substance — to remain on the floor of the aisle for a period of time sufficient to constitute constructive notice; (e) failing to deploy warning cones, wet-floor signage, or any other form of alert to business invitees of the Dangerous Condition; (f) failing to properly train, supervise, and/or direct their employees, agents, and servants to identify and report hazardous floor conditions; and (g) failing to take any timely remedial action despite the presence of their employees in the immediate vicinity of the Dangerous Condition.

25. The dangerous condition of the Premises, and Defendants' failure to maintain the Premises in a reasonably safe condition and to warn Plaintiff of the Dangerous Condition, was a substantial factor in causing Plaintiff's fall on July 20, 2024, and all injuries and damages

sustained by Plaintiff as alleged herein.

26. As a direct and proximate result of the dangerous condition of the Premises, and Defendants' breach of their duty as owners and/or operators thereof, Plaintiff TAMI ENG suffered serious and permanent injuries. Said injuries include, without limitation, all injuries set forth in Paragraph 15(a) herein, which are incorporated by reference as though fully set forth herein. Plaintiff's injuries are ongoing and she remains under active medical care as of the date of the filing of this Complaint.

27. As a direct and proximate result of the dangerous condition of the Premises and Defendants' breach of duty, Plaintiff has incurred and will continue to incur medical expenses for the care and treatment of her injuries, including all treatment described in Paragraph 15(b), incorporated by reference herein. Plaintiff's future medical needs include, but are not limited to, continued orthopedic care, physical and aquatic therapy, additional diagnostic imaging, and possible surgical intervention.

28. As a further direct and proximate result of the dangerous condition of the Premises and Defendants' breach of duty, Plaintiff has suffered and continues to suffer loss of earnings and earning capacity in an amount to be determined according to proof at trial.

29. As a further direct and proximate result of the dangerous condition of the Premises and Defendants' breach of duty, Plaintiff has suffered and continues to suffer pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, and other non-economic damages. The aggregate of Plaintiff's past, present, and future economic and non-economic damages exceeds the minimum jurisdictional limits of this Court, the exact amount of which will be proven at trial.

**PRAYER**

WHEREFORE, Plaintiff TAMI ENG prays for judgment against Defendants, and each of them, as follows:

1. For general damages for pain, suffering, emotional distress, and loss of enjoyment of life in an amount in excess of $35,000, and to be proven at trial;

2. For special damages for medical and healthcare expenses, past and future, according to proof at trial;

3. For special damages for loss of earnings and earning capacity, past and future, according to proof at trial;

4. For prejudgment interest pursuant to California Civil Code § 3291;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

DATED: July 18, 2026

THE KROLIKOWSKI LAW FIRM

Adam Krolikowski, Esq. for
Plaintiff TAMI ENG

**DEMAND FOR JURY TRIAL**

PLAINTIFF TAMI ENG hereby demands a trial by jury on all issues triable to a jury in this action.

DATED: July 18, 2026

THE KROLIKOWSKI LAW FIRM

Adam Krolikowski, Esq. for
Plaintiff TAMI ENG